MAXEY, JORDAN & COMPANY, plaintiffs in error, vs. ANN
E. LOYAL, et al., defendants in error.

Real estate in the town of Monticello, was sold at sheriff's sale, as the
property of an insolvent debtor. *Held*, that the wife of the defendant
in *fi. fa.*, is entitled, under the 2013 and 2017 sections of the Code, to
have $500 00 of the proceeds of the sale, set apart and invested in a
home for herself and family, against a pre-existing creditor.

When land was sold under a judgment obtained in 1861, the wife could
claim no more of the proceeds as exempt from payment of her
husband's debts than was *then* exempt by law. WARNER, J., dis-
senting.

Exemption Laws.    Retroactive Legislation.    Decided by
Judge N. G. FOSTER.    Jasper Superior Court.    November,
Adjourned Term, 1867.

Boynton filed a bill against Richard J. Loyal, to enforce
the vendor's lien. Loyal admitted all the facts necessary to
sustain the lien and prayed, that after discharging it the
amount allowed to insolvent debtors be set apart for his bene-
fit, as allowed by law. In April, 1867, there was a decree
as prayed for by Boynton.

Under this decree, the sheriff sold the land for $407 41
over and above what was sufficient to pay off said vendor's
lien. The wife of Loyal had given notice of her intention to
claim $500 00 out of the proceeds for the benefit of herself.
The sheriff was ruled. Mrs. Loyal, and Maxey, Jordan &
Company, creditors, were made parties, and were at issue as
to the disposition of said *surplus*. Maxey, Jordan & Com-
pany showed that they obtained a judgment against Richard
J. Loyal, in Jasper Superior Court, on the 28th of October,
1861, for $430, principal, and $99 10 for interest to date of
the judgment, and closed. Mrs. Loyal proved by her husband
that he was insolvent, and closed. It was admitted that the
*surplus* was the proceeds of a house and lot in Monticello,
Georgia, and that Loyal had no other land.

Under this state of facts, the Judge decided that the sheriff
should invest all of said *surplus* in a home for Mrs. Loyal

and her family, and this is assigned as error by Maxey, Jordan & Company.

CHAS. L. JORDAN, W. MAXEY, JNO. R. DYER, by Judge A. REESE, for plaintiff in error, said that there was no question as to retroaction in this cause, for that section second of the Code limited the sections 2013, 2017, which give the $500 to the wife.

GEORGE T. BARTLETT, for defendant in error.

BROWN, C. J.

The single question presented for our consideration in this case is, can the family of an insolvent debtor legally claim $500, out of the proceeds of his town property, sold at sheriff's sale, as against a creditor, whose debt existed and was in judgment prior to the adoption of the Code, which raised the amount from $200, which was allowed the family by Act of 1845, to $500, which is now allowed by the Code.

It is insisted by counsel for plaintiff in error, that the family is only entitled to $200, which was the amount exempt by law at the time the contract was made, and that sections 2013 and 2017 of the Revised Code, are qualified by section 2. These sections are as follows:

"SECTION 2013. The following property of every debtor, who is the head of a family, shall be exempt from levy and sale by virtue of *any process whatever*, under the laws of this State; nor shall any valid lien be created thereon, except in the manner hereinafter pointed out, but shall remain for the use and benefit of the family of the debtor: 1. Fifty acres of land; * * or in lieu of the above land, real estate in a city, town or village, not exceeding $500 in value."

"SECTION 2017. If the debtor owns town property exceeding in value the sum of five hundred dollars, and it can not be so divided as to give to his family that amount, he may give notice to the officer levying thereon, and when the proceeds of the sale are to be distributed, the Court shall order five hundred dollars of the sum to be invested by some proper

person, in a home for the family of the debtor, which shall be exempt, as if laid off under this law."

"SECTION 2. This Code shall take effect on the first day of January, 1863. All offences committed prior to that date, shall be tried and punished under existing laws; and all rights, or obligations, or duties acquired or imposed by existing laws, shall remain valid and binding, notwithstanding the repeal or modification of such laws."

A majority of the Court are of opinion that it was not the intention of the legislature to qualify sections 2013 and 2017, as cited above, by section 2 of the Code, and that the humane provision made for the family of an insolvent debtor should not be defeated by such a construction.

The language of section 2013 is very broad and sweeping. It declares such property *exempt from levy and sale* by virtue of *any process whatever*, and that it shall *remain* for the use and benefit of the family of the debtor. If the intention had been to exempt the property only as against subsequent creditors, why use the words exempt from levy and sale by virtue of *any process whatever?* Why not have said it should be exempt from levy and sale, by virtue of any process, upon any debt contracted after this date? Suppose there had been no exemption prior to the adoption of the Code, and it had used the strong expression, "exempt as against any process whatever," would any Court, in construing the Code, have felt authorized to say that the second section of the Code was intended to qualify this, and destroy all exemption as against debts then in existence? We think not. Then how are we authorized to say, it was intended that no debtor's family should have the increase in the amount, as against pre-existing creditors? We must look to the language used by the legislature, and construe it with reference to the object the law-making power had in view, having regard to the reason and spirit of the Act, and considering the policy of the legislature, which is to be ascertained by reference to other Acts which are in *pari materia.*

Exemption laws, and laws making provision for the support of the families of insolvent, or deceased persons, rest

upon a wise public policy, looking to the preservation of families, and securing to them that protection which is necessary to the best interest of society, and the well-being of every community. The principle was well expressed by Mr. Justice Johnson in Ogden vs. Sanders, 12 Wheat., 283, in the following language: "For it is among the duties of society to enforce the rights of humanity, and both the debtor and the society have their interests in the administration of justice, and in the general good; interests which must not be swallowed up and lost sight of while yielding attention to the claims of the creditor. The debtor may plead the visitations of Providence, and the society has an interest in preserving every member of the community from despondency, in relieving him from a hopeless state of prostration in which he would be useless to himself, his family and the country."

There has been a growing disposition in the great popular heart of Georgia, for years past, as shown by her legislation, to enforce the rights of humanity, and preserve the helpless wives and children of improvident or unfortunate husbands, from despondency, by relieving them from helpless prostration. The old rule, which had but little regard for the rights of humanity, when in conflict with the pecuniary interest of creditors, has been modified, and debtors as well as creditors are now, as a class, regarded as worthy the consideration of those who make laws for the regulation of society.

The rule formerly was, that the family of an unfortunate debtor might be deprived of every article of necessity, as well as comfort, to satisfy the debt, and his person might be seized and imprisoned at the will of the creditor. But I am happy to know that these barbarous sentiments of the darker age, are fast giving place to the more benign tenets of forgiveness, charity and humanity, which are inculcated by the divine author of christianity, as cardinal virtues. The legislature has engrafted a more humane system on our statute book, and it is the duty of the Courts to enforce it to the extent of their power. While this is the duty of the legislature and the Courts, it is also the duty of both, to discountenance and suppress, as far as possible, all fraud that may be attempted

to be practiced by bad men to the injury of creditors, and to see that every right is secured to the creditor, which is compatible with the humanity of our system, the preservation of families, and the well-being of society.

In view of the humane policy established by our legislation for the protection and support of the families of insolvent and deceased persons, coming as they do, within the same rule, for the same reasons, we are fully satisfied that it was not the intention of the legislature in the adoption of the Code, to so qualify the sections giving the family of the insolvent $500 out of the sale of his town property, by the language of the second section, as to defeat the allowance in all cases of debts contracted by the insolvent prior to that time.

We think the *unanimous* decision of this Court, made at this term, in the case of *Barron vs. Burny, et al.*, (*ante* 264) establishes a principle that must control this case. Sections 2530, 2533 and 2537 of the Revised Code, are intended to carry out the precise object contemplated by sections 2013 and 2017, the protection and support of the family, if need be, independently of the rights of creditors. To show that the cases rest upon the same principle, we quote the following sections of the Code:

"SECTION 2530. Among the necessary expenses of administration, and to be *preferred before all other debts*, is the provision for the support of the family, to be ascertained as follows: upon the death of any person, testate or intestate, leaving an estate, solvent or *insolvent*, and leaving a widow, or a widow and minor child or children, or minor child or children only, it shall be the duty of the Ordinary, on the application of the widow, or the guardian of the child or children, or any other person in their behalf, on notice to the representative of the estate, if there is one, and if none, without notice, to appoint five discreet appraisers, and it shall be the duty of such appraisers, or a majority of them, to set apart and assign to such widow and children, or children only, either in property or money, a sufficiency from the estate for their support and maintainance, for the space of twelve

months, from the date of the administration, in case there be administration on the estate, to be estimated according to the circumstances and standing of the family previous to the death of the testator or intestate, and keeping in view also the solvency of the estate. If there be a widow, the appraisers shall also set apart, for the use of herself and children, a sufficient amount of the household furniture. The provision set apart for the family shall, in no event, be less than the sum of one hundred dollars, and if it shall appear upon a just appraisement of the estate, that it does not exceed in value the sum of five hundred dollars, it shall be the duty of the appraisers to set apart the whole of said estate for the support and maintainance of such widow and child or children, or if no surviving widow, to the lawful guardian of the child or children, for their support."

"SECTION 2533. The property so set apart by the appraisers shall vest in the widow and child or children, and if no widow, in such children, share and share alike, and the same shall not be administered as the estate of the deceased husband or father."

"SECTION 2537. When the whole of an estate is set apart as provided in section 2530, the widow may pay so much and such parts of the debts of the deceased husband *as she may think proper*, consistently with her means, with the advice and consent of the Ordinary."

By reference to the Act of 23d February, 1850, it will be seen that the allowance for the widow and children, in case the estate of the deceased was insolvent, was one hundred dollars. Cobb's Dig. 297. As is already shown, the Code increases this to five hundred dollars, and gives the appraisers discretion to increase it beyond that amount, and declares that it shall be *preferred before all other debts*. Now, if section 2 of the Code, as above quoted, is to be read in connection with, and, as counsel insisted, as a *proviso* to sections 2013 and 2017, why is it not to be read in a like manner as a *proviso* to sections 2530, 2533 and 2537, which increase the exemption from one hundred to at least five hundred dollars, as against all debts, and leave it in the discretion of the

widow, who has the whole estate of the deceased in her possession, when it does not exceed five hundred dollars, whether she will pay one dollar of the indebtedness. We ask, in all candor, how can section 2 be held to limit the exemption to subsequent indebtedness in the one case and not in the other?

In *Barron vs. Burny*, above mentioned, this Court unanimously ruled that "Although under the Code, executors *de son tort* can not get credit for any debt they may have paid, yet, if in good faith, they have furnished the widow her year's support according to her circumstances in life, and this has exhausted the effects they have used, they are not liable except for the excess. The claim of the widow is not a debt, but a special provision allowed by law *in preference to any debts or liens held by creditors."*

If so, why is not the five hundred dollars set apart from the proceeds of the sale of the town property of the insolvent to purchase a home for his wife and children, a "special provision allowed by law in preference to any debts or liens held by creditors?" We confess we are unable to see the distinction.

But it has been insisted that this construction violates the Constitution, because the Constitution of 1865, which has been superceded by that of 1868, declares that retroactive laws injuriously affecting any right of the citizen, are prohibited.

If this law had been prohibited by that provision of the former Constitution, it would seem that the entire repeal of that Constitution without the repeal of the law, would relieve the case of all difficulty growing out of that objection, especially as the provision above quoted is omitted and dropped from the Constitution of 1868.

We are satisfied, however, that the provision of the Code now under consideration, did not violate the Constitution of 1865. As we have already shown, the exemption made by the Code for the benefit of the wife and children of a deceased person, is a *special provision* allowed by law, in preference to any liens or debts held by creditors. As it is of higher

dignity than the rights of any creditor, and is so held by this Court, its enforcement can not injuriously affect any rights of the creditor. In other words, no creditor has any right to satisfaction out of the estate, till this special provision, this right of humanity, is first satisfied. Therefore no creditor's right is injuriously affected by this Act, construed as the legislature evidently intended it should be. And, as no distinction in principle can be drawn between the case of the family of a deceased person, as provided for by the Code, and the family of an insolvent, whose property is taken and sold by the sheriff, both being alike entitled, on the score of humanity, to some reasonable provision for support, the same rule must apply in this case, which relieves it of all Constitutional objection.

The view which we have taken of the rights of families to support, and of the power of the legislature to provide for their relief, is founded in sound reason, and sustained by high authority.

The late Chief Justice Taney, delivering the opinion of the Supreme Court of the United States, in the case of Bronson vs. Kinzie, 1 How., 315, says, "For undoubtedly, a State may regulate, at pleasure, the modes of proceeding in its Courts in relation to *past contracts* as well as future. It may, for example, shorten the period of time within which claims shall be barred by the Statute of Limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to executions on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not, by every sovereignty according to its own views of policy and humanity. It must reside in every State, to enable it to secure its citizens from unjust and harrassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community."

The Courts of New York have gone so far as to establish

the rule, that it is not in the power of the husband, or head of the family, when making a contract prospective in its character, to waive the right of exemption, so as to charge the exempt property with the payment of the debt. This was ruled in Kneetle vs. Newcomb, 22 N. Y. Reps., 249. In that case the plaintiff inserted in the note, the following provision : "And I hereby waive and relinquish all right of exemption of any property I may have from execution on this debt." The property exempt amounted to six hundred dollars in value. After judgment on the note the property was levied on and sold, and the plaintiff, who was the debtor, brought an action of trespass for the taking of the property. The Supreme Court of New York held he was entitled to recover, and that judgment was affirmed in the Court of Appeals by the unanimous judgment of the full bench. The same principle is sustained in Crawford vs. Lockwood, 9 How. Pr. R., 547. See also Harper vs. Leal, 10 How. Pr. R., 282; 1 Kernan R. 266.

The current of legislation, sustained by the Courts, of this State, has gone upon the principle contended for in this decision, for years past. The amount of property exempt from levy and sale has been increased from time to time by various acts of the legislature. The support allowed the family of the deceased has also been enlarged from time to time, and sustained by the Courts. The daily, weekly, and monthly wages of laborers have been exempt from the process of garnishment. Debts due by trustees of different grades, have been declared of higher dignity and given precedence over the debts or liens of creditors that would, but for the enactment, have held precedence. Debts due for rent have been preferred to other debts secured in the same manner.

And it has been held by this Court at its present session in the case of *The State vs. Dickson*, (*ante* 171), that debts due the Western and Atlantic Railroad, which is the property of the State, and its incomes part of the revenue of the State, take precedence over debts of older date due an individual, which were secured by mortgage to the individual, before the State's debt was contracted ; and, that the State is entitled to

the money raised by the sale of the mortgaged property, though the mortgage existed before the mortgagor was the State's debtor.

The law of imprisonment for debt has been modified from time to time, and our new Constitution abolishes it entirely. But none of the sticklers for the creditor's rights, to have the precise remedies allowed by law when the debt was contracted, claim that it was a violation of the constitutional rights of the creditor to abolish imprisonment for debt. If the State has the right to make these various modifications in her law, affecting the remedies allowed parties litigant, many of which may operate the entire loss of the claims of creditors, which but for such changes in the law might have been secured, why may she not make the one now in question?

Before closing this opinion, we will remark, that this Court is committed to the doctrine that an exemption for the benefit of the family holds good as against creditors, in an early case. In *Hopkins vs. Lang et al.*, 9 *Ga.*, 261, Warner J. delivering the opinion, says : " We are of opinion, from a careful reading of the enacting clause of the statute, when taken in connection with the title thereof, that it was the intention of the legislature to make provision for the support and maintenance of the widow and children of the testator or intestate for the space of twelve months immediately after his death, according to their rank and condition in life, whether the estate be solvent or insolvent." If the estate were *insolvent,* it follows that the rights of the creditors must, according to this ruling, be postponed to the claims of the widow and children.

We will simply add that there is nothing in this record that shows that Mrs. Loyal was the wife of Loyal at the time of the adoption of the Code, or that he was then insolvent. There is, therefore, nothing in the record inconsistent with the position that her rights accrued since the adoption of the Code, and are as a consequence to be governed by it.

Judgment affirmed.

McCay, J., concurred, but wrote no opinion.

Maxey Jordan & Company *vs.* Loyal.

WARNER, J., dissenting.

The question made by the record in this case is, whether the wife of an insolvent debtor is entitled to have the sum of five hundred dollars worth of real estate in a city, town or village, exempt from levy and sale in satisfaction of a judgment obtained on the 28th of October, 1861, according to the provisions of the 2013d section of the Code, or whether she is entitled to have only the sum of two hundred dollars exempted from levy and sale, under the Act of 1845. The debt was contracted and the judgment obtained prior to the adoption of the Code. The exemption of five hundred dollars is claimed *under the Code* and not under an Act of the legislature passed since the adoption of the Code.

The Constitution of this State, at the time of the adoption of the Code, declared that "retroactive laws, injuriously affecting *any right* of the citizen, are prohibited." The second section of the Code declares that "this Code shall take effect on the first day of January, 1863. All offences committed prior to that date shall be tried and punished under existing laws, and all rights or obligations or duties acquired or imposed by *existing laws* shall remain valid and *binding*, notwithstanding the repeal or modification of such law."

In my judgment, the rights of the creditor, as well as the rights of the claimant in this case, are to be measured and decided in accordance with the law, as the same *existed*, prior to the adoption of the Code. To hold otherwise would be to *ignore* that provision of the State Constitution which prohibits *retroactive* legislation at the time of the adoption of the Code, as well as the express provisions of the Code, which was adopted in strict compliance with that Constitution. I, therefore, dissent from the judgment of the Court in this case.